**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

FILED
2015 APR 21 PM 3: 21
US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO. FLORIDA

ACME WORLDWIDE ENTERPRISES, INC.,

Plaintiff,

v. Case No. 6:15-CV-637-ORL-37-DAB

INDUSTRIAL SMOKE & MIRRORS, INC.,

Defendant.

_______________________________________/

**COMPLAINT FOR PATENT INFRINGEMENT**
**AND DEMAND FOR JURY TRIAL (INJUNCTIVE RELIEF SOUGHT)**

Plaintiff ACME Worldwide Enterprises, Inc., by its undersigned counsel, asserts its Complaint for patent infringement, unfair competition and other related claims against Defendant Industrial Smoke & Mirrors, Inc. In support of its claims Plaintiff alleges as follows:

I. PARTIES

1. ACME Worldwide Enterprises, Inc. ("ACME") is a corporation organized and existing under the laws of New Mexico, having its principal offices at 1710 Randolph Court SE, Albuquerque, New Mexico 87106. ACME is engaged in the business of inventing, manufacturing and marketing weapons simulations systems and related training equipment, primarily for military or public safety uses.

2. ACME is the owner of U.S. Patent No. 8,690,575 B1 titled "Apparatus and Method for a Weapon Simulator" ("the '575 Patent") issued by the U.S. Patent and Trademark Office ("USPTO") on April 8, 2014.

3. Industrial Smoke & Mirrors, Inc. ("ISM") is a corporation organized and existing under the laws of Florida, having its principal offices at 3024 Shader Road, Orlando, Florida 32808. ISM is engaged in the business of manufacturing and marketing weapons simulation systems and related equipment, much the same as those aspects of ACME's business.

## II. JURISDICTION AND VENUE

4. This action arises under the patent laws of the United States, 35 U.S.C. §§ 271 *et seq.* This Court has jurisdiction over the subject matter of ACME's claims for patent infringement pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has personal jurisdiction over ISM, which regularly conducts business in New Mexico and by its actions has caused injury to ACME in Florida in the judicial district where this Complaint is being filed.

6. Venue is proper in this judicial district and division where ISM regularly conducts business.

## III. BACKGROUND FACTS

7. ACME was originally organized in New Mexico in 1994 by a group including its current president, Randall Gurulé, an electrical engineer who had substantial experience in designing and building training and simulation equipment for use by U.S. Armed Services and related agencies. Over the course of its existence ACME has developed, fabricated and sold a wide variety of training aid and simulation equipment to all the principal U.S. military services and to contractors for those and other government agencies. Its products have included a dynamic motion seat used in flight training by the

U.S. Navy and Air Force; a boom operator training simulator used to train persons in refueling aircraft in mid-air; and its most recent major innovative product, the GAR® weapon simulator, which is the subject of this Complaint.

8. During the past 20 years ACME has offered and sold its products not only to U.S. military and government agencies and contractors who received contract awards from those agencies, but to authorized government agencies and private businesses around the globe. Private industry customers and contractors for its products have included The Boeing Company, Lockheed Martin Corporation and Science Applications International Corporation ("SAIC"), among many others. It has received government and industry recognition as a small, high-quality provider of training and simulation equipment. Since its inception it has grown from a company with several employees to its present size of approximately 30 full-time employees or contractors, many of whom are engineers or skilled technicians. As it grew in both the scope of its products and size of its workforce, its emphasis on, and expenditures for, research and development of new products have likewise increased.

9. In or around early 2007 ACME undertook to research and design the first model of its GAR® weapons simulator, featuring an electro-mechanical operated recoil simulation device for use in training military personnel to utilize small to heavy caliber machine guns and to adjust to situations in which a weapon misfired or otherwise failed to operate correctly. Training devices for such purpose then in use, which produced recoil pneumatically rather than electro-mechanically, were awkward to use and did not simulate accurately the recoil effect of actual weaponry, and ACME believed it could

design and build a more efficient and realistic and less cumbersome simulation system and device.

10. Before the end of 2008 engineers and others working for ACME completed the initial design and development of ACME's GAR® weapon simulator. Those inventors assigned their patent rights in the device and method they had designed to ACME. On November 3, 2008, ACME filed a provisional patent application with the USPTO for the method and device embodying that invention, which was given Application No. 61/110,753. On November 3, 2009, ACME filed its utility patent application with the USPTO for its invention, which was given Application No. 12/611,420. These applications were and remained unpublished, and as a result the technical elements and claims of ACME's inventions were not publicly disclosed throughout the period of prosecution of its application. On April 8, 2014, the USPTO issued the '575 Patent to ACME. A copy of the '575 Patent is attached hereto as Exhibit A and incorporated in this Complaint.

11. After having completed a functioning model of its GAR® weapon simulator, while its patent application was still pending, ACME began to show an early version of its apparatus and method to potential customers. Beginning in 2009, ACME brought a version of its GAR® weapon simulator, for demonstration purposes, to the Interservice/Industry Training, Simulation and Education Conference ("I/ITSEC") held annually in December in Orlando, Florida. I/ITSEC is and has for many years been the principal annual event at which defense-related government agencies, businesses, academics and consultants meet and confer about simulation equipment and techniques

used in various aspects of military training. ACME has for many years participated at I/ITSEC. From 2009 through and including the present it has held a booth at I/ITSEC to meet and confer with other interested parties and demonstrate its equipment. In making available its GAR® weapon simulator for demonstration, it took measures to prevent prospective competitors from having unhindered access to the inventive elements of the method and device that were the subject of its pending patent application.

12. ACME demonstrated its GAR® weapon simulator in conjunction with an M2 heavy caliber machine gun at a booth at the 2009 I/ITSEC. At that time it monitored access to that demonstration unit and kept it under cover when it was not being demonstrated to prevent other attendees from closely inspecting its proprietary technology incorporated in that device. At that gathering ACME noticed representatives of ISM attempting to inspect ACME's device. ISM's representatives inquired as to how ACME's GAR® unit operated. In order to discourage and prevent ISM personnel from discovering ACME's proprietary information, the representatives of ISM who were found attempting to inspect ACME's recoil unit were asked to leave ACME's booth.

13. ACME again demonstrated its GAR® weapon simulator at the 2010 and 2011 I/ITSEC, while its patent application was still pending and had not been made public, which again drew the attention of multiple ISM employees or representatives. On those occasions, several ISM representatives observed ACME's demonstration, and surreptitiously sought to closely inspect ACME's simulator. Such inspection was not permitted by ACME. ISM's representatives inquired about its patent status. At the 2011 event ACME's president Randall Gurulé advised one such representative,

Dennis Wilhelm, who had been again observed attempting to inspect ACME's GAR® simulator and then inquired about the gun recoil mechanism in ACME's simulator, that ACME had applied for a patent for its invention, and refused to allow Mr. Wilhelm to further inspect the workings of the device.

14. At the 2011 I/ITSEC event several ACME employees observed a comparable M240 demonstration weapon simulator system from ISM which ACME believed, and believes, had been surreptitiously copied from ACME's weapon simulator that had been displayed at I/ITSEC in previous years. Because ACME was not able to closely inspect ISM's device at that time, and because ACME's patent application was still being processed by the USPTO and had not been made public, ACME took no action to challenge ISM concerning its comparable device at that time.

15. Early in the year 2012 ISM's president Andrew Garvis telephoned first ACME's Chief Engineer Mike Skelton, and then Mr. Gurulé, to inquire about the number of a patent he apparently believed had already been issued to ACME for its weapon simulator; and over the next few months ISM's attorney wrote to Mr. Gurulé asking for the patent number or published patent application number. Because ACME's patent application was then unpublished and no patent had yet issued, and because ACME believed ISM was likely engaging in copying its GAR® weapon simulator and should not be trusted to know the specific proprietary elements of ACME's simulator device and method, Mr. Gurulé did not provide any information in response to those inquiries.

16. At subsequent I/ITSEC shows in December 2012 and 2013, versions of ISM's weapon simulator were on display at one or more locations. They appeared to

replicate in all material aspects the inventive elements of ACME's weapon simulator apparatus and method that were the subject of ACME's pending patent application, but because no patent had yet issued ACME did not then directly challenge ISM on its copying of ACME's invention.

17. ACME's '575 Patent was issued by the USPTO on April 8, 2014. After ACME completed a review and comparison of its patented apparatus and method with ISM's weapon simulator, on August 28, 2014 it notified ISM that ISM's weapon simulator infringed ACME's '575 Patent, offered to consider negotiating a license for the use of its patented technology, and in the event ISM refused, advised it would take action to pursue its claim for patent infringement and seek all remedies available. In reply, ISM asserted that its weapon simulator was fundamentally different from ACME's patented simulator and declined to negotiate a license for rights from ACME.

18. Since introducing a weapons simulator that incorporates the patented technology that is the subject of its '575 Patent, ACME has sold its simulator as part of its GAR® system to a wide variety of government agencies and military customers. Since making its first sales of a training simulator featuring its now-patented active recoil unit, ACME has sold its GAR® weapon simulator to customers including but not limited to the U.S. Navy and U.S. Coast Guard, SAIC, Raydon Corporation, Lockheed-Martin, Wegmann USA, Inc., Aegis Technologies Group Inc., and many more.

19. At all times prior to the issuance of the '575 Patent ACME took measures to assure the confidentiality of its intellectual property in its GAR® weapon simulator, by filing patent applications and also by securing its proprietary rights by entering into

confidentiality and non-disclosure agreements with customers or prospective customers, and by limiting access to its weapon simulator when it was displayed at meetings such as I/ITSEC.

20. On information and belief ISM began offering its version of a weapon simulator, which it refers to as an Automatic Weapon System Platform, Model M240, to prospective customers in or around 2010. On information and belief it has sold its Model M240 weapon simulator to a number of customers since then pursuant to bid programs in which ACME participated but did not receive an award. ACME first became suspicious of these sales when it began losing bids that it heard ISM had won, beginning sometime in 2012, and thereafter initiated an inquiry into ISM's weapon simulators.

21. ACME has determined that ISM's drawings and electrical schematics for its weapon simulator incorporated elements of the apparatus and method that were proprietary trade secrets of ACME and the subject of its patent application that resulted in the issuance of the '575 Patent. ACME believes, based on information released by ISM or other businesses or agencies purchasing ISM's weapon simulators, that ISM has received hundreds of thousands or more dollars for purchases of its products using proprietary technology that belonged to ACME, which ISM knowingly and improperly obtained through corporate espionage, and which is currently covered by the '575 Patent.

22. Beginning in 2012, if not earlier, ISM has bid on, and received awards of, contracts from a variety of contractors providing training and simulation equipment to branches of the United States military and other government agencies, using drawings or

schematics in their bid proposals that ACME believes and contends were the result of willful misappropriation of its proprietary trade secret technology.

IV. COUNT I (Patent Infringement)

23. ACME realleges and incorporates here by reference the facts alleged in paragraphs 1 through 22 above.

24. ACME's '575 Patent was lawfully issued to it as the assignee of its inventors on April 8, 2014, in compliance with the Patent Laws of the United States, 35 U.S.C. §§ 101 *et seq.*, and is currently valid and will remain in full force and effect until March 23, 2031.

25. ACME gave notice to ISM no later than August 28, 2014, that ISM's Automated Weapon System Platform, which ISM identified as its Model M240, infringed ACME's '575 Patent and contained a weapon simulator that would require a license from ACME to allow ISM to lawfully manufacture or sell such a weapon simulator. ISM knowingly and willfully refused to acknowledge ACME's rights to its patent, and indicated it would continue to manufacture and market its device despite knowledge of the facts that showed it to be infringing.

26. ISM presently continues to manufacture, offer for sale and sell to its customers, and use in connection with its own business, several models of a weapon simulator which infringe ACME's '575 Patent, including but not necessarily limited to claim 1, of that patent.

27. ISM has committed the acts of infringement described, recited or referenced herein with knowledge that it replicated ACME's GAR® weapon simulator and has done so knowingly and willfully in violation of ACME's patent.

28. By the actions described above ISM has caused injury to ACME, and ACME is entitled to recover damages and obtain injunctive relief as a result of those actions.

## V. COUNT II (Contributory Infringement)

29. ACME realleges and incorporates here by reference the facts alleged in paragraphs 1 through 22 above.

30. Both before the USPTO issued the '575 Patent and after ISM became aware of the issuance of that patent, ISM offered to sell its infringing Automated Weapon System Platform to prospective customers and, with knowledge of ACME's patent after its issuance, on information and belief has sold infringing devices to customers.

31. By the actions described above ISM has caused injury to ACME, and ACME is entitled to recover damages and obtain injunctive relief as a result of those actions.

## VI. PRAYER FOR RELIEF

WHEREFORE, ACME prays for judgment against ISM as follows:

A. That the Court enter judgment in favor of ACME, finding that ISM has infringed the '575 Patent, and that such infringement has been knowing and willful and was ongoing at least through the time of filing of this Complaint;

B. That this Court permanently enjoin ISM from continuing to manufacture, market and sell its model M240 weapon simulator or any similar device in violation of ACME's '575 Patent;

C. That this Court order ISM to provide an accounting of its sales and profits in connection with its sale of its model M240 weapon simulator, or any similar or related device that incorporates an active recoil unit that incorporates proprietary technology developed or invented by or on behalf of ACME, since ISM's first sale of any such device up through and including the present;

D. That this Court award ACME damages to compensate it for ISM's infringement of the '575 Patent in whatever amount is proved at trialand that such damages be trebled as provided by 35 U.S.C. § 284 by reason of ISM's knowing and willful infringement of ACME's patent;

E. That this Court award ACME prejudgment interest on the amount of all damages awarded;

F. That this Court award ACME its costs of suit as permitted by the laws and rules governing this proceeding, including but not limited to an award of attorneys fees as provided by applicable law;

G. That this Court award post-judgment interest on all amounts payable pursuant to the judgment of the Court; and

H. That this Court award such further relief as it deems just and proper.

VII. JURY TRIAL DEMAND

Plaintiff ACME requests trial by jury on all claims triable by jury alleged in its Complaint.

Respectfully submitted,

Lauren Millcarek
Florida Bar No. 100317
HOLLAND & KNIGHT LLP
200 S. Orange Ave., Suite 2600
Orlando, FL 32801
(407) 244-5155
lauren.millcarek@hklaw.com

John P. Moran
(*Pro hac vice motion forthcoming*)
HOLLAND & KNIGHT LLP
800 17th St. NW, Suite 1100
Washington, DC 20006
(202) 955-3000
john.moran@hklaw.com

*Counsel for Plaintiff ACME Worldwide Enterprises, Inc.*

Dated: April 21, 2015.